UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICKEY REDMOND & CO., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:18-CV-1088-X |
| MORBERN, INC.; | § | |
| MORBERN USA, INC.; and | § | |
| RKB INTERNATIONAL, INC., | § | |
| | § | |
| *Defendants.* | § | |

## **MEMORANDUM OPINION AND ORDER**

This is a breach of contract case over allegedly unpaid commissions stemming from a two-page agreement from 1986. What could go wrong? The defendants filed a motion for summary judgment raising a bevy of cascading arguments. That motion is ripe. First, the Court concludes there is no record evidence of a contract with Morbern, Inc., so it is entitled to dismissal. Second, the sales commission statements gave Mickey Redmond & Co. actual or constructive knowledge of the unpaid commissions, so its fraudulent concealment avoidance of the defendants' four-year statute of limitations defense doesn't apply. This renders only one month in dispute. Third, of the three customers involving unpaid commissions from that month, two customers (Magna and Lear) are large scale suppliers that do not fall within the contract's provision of commissions on sales to "jobbers" (contextually and commonly understood to be those who undertake small jobs). And finally, the summary judgment record yields no evidence that Mickey Redmond & Co. performed a sale or

1

service to Miami Corp. (the final company at issue in that month).  That means there's nothing left of Mickey Redmond & Co.'s case for a jury to resolve.  As a result, the Court GRANTS the defendant's motion for summary judgment and DISMISSES WITH PREJUDICE Mickey Redmond & Co.'s claim against the defendants.

## I. Background

Morbern, Inc. (Morbern) designs and makes decorative vinyl upholstery for the contract, health care, hospitality, automotive, and marine markets, among others. Morbern USA, Inc. (Morbern USA) is Morbern's subsidiary for distributing products in the United States.  And RKB International, Inc. (RKB) was primarily a seller of Morbern products on the west coast before it was dissolved.

Morbern USA and RKB entered into agreements with approximately 10–20 sales representatives in the United States at any given time, who were assigned specific regions to pursue sales on which they would earn commissions.  Mickey Redmond & Co. (Mickey Redmond) was a sales representative and warehouse operator for RKB and Mobern USA from 1986 to 2014.  The relationship was governed by two sales and warehousing agreements Mickey Redmond entered into with RKB and Morbern USA in 1986.   Under those agreements, Mickey Redmond was entitled to a 5% warehouse fee on all sales shipped to a customer from Mickey Redmond's warehouse and a 5% sales commission on certain sales by RKB and Morbern USA.

The Morbern USA agreement designated the five-state area of Texas, Oklahoma, Kansas, New Mexico, and Louisiana for Mickey Redmond's responsibility for sales and service in the following industries: "furniture upholstery, jobber

(Furniture and Automotive), Van and motor home, contract office, marine, exceptions are bus, truck (highway tractor) industrial seating and vacuum-foam products except where designated and assigned."[1]  The Morbern USA agreement further designated Missouri and Arkansas as marine only.

The defendants contend the agreements included "jobber" orders but not Original Equipment Manufacturer (OEM) orders.  The defendants describe OEM orders as for car manufacturers rather than the aftermarket sector and put forward evidence that they handled OEM relationships through Morbern USA representatives in Michigan.  The defendants also contend Mickey Redmond had to originate a sale from a covered industry within their territory to receive a sales commission.  By contrast, Mickey Redmond put forth evidence that the defendants paid it for sales into the territory involving customers Mickey Redmond had no contact with other than shipping products.  And Mickey Redmond further contends that it was paid sales commissions for jobbers that provided material to OEMs like Toyota.

Both agreements were terminable by either party with 30 days' notice.  As of 2014, Mickey Redmond operated a single warehouse in Dallas that it shipped Morbern products from.  RKB and Morbern USA gave Mickey Redmond the 30-day notice of termination of their agreements on April 4, 2014.

Four years later (on April 3, 2018), Mickey Redmond then brought this suit for commissions allegedly due but unpaid prior to the effective termination on May 4,

---

[1] Doc. 51 at 17.

2014 regarding shipments into Texas.  These shipments into Texas were for nine customers: Lear, General Motors, Ford Motor Company, Johnson Controls, Miami, Magna, Vecta Contract Furniture, BWI of Kansas, and Weckworth Manufacturing. The defendants put forth evidence that from the four years before the lawsuit to the point of termination[2] (April 3 to May 4, 2014), they had no sales to six of the nine customers.[3]  The remaining three companies that did have sales after April 3, 2014 were Lear, Magna, and Miami Corp.  The defendants did not pay Mickey Redmond commissions on sales to these three companies.  Of those three, the parties agree that only Miami Corp. does aftermarket as opposed to original equipment maker jobs, and Lear and Magna are Tier 1 suppliers to original equipment makers like General Motors.  Mickey Redmond alleges that the defendants fraudulently concealed the injury by not listing on commission statements the shipments going into Mickey Redmond's territory.

## II.  Law

Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[2] The applicable four-year statute of limitations would prevent Mickey Redmond from recovering unpaid commissions before April 3, 2014, unless a tolling principle such as fraudulent concealment applies.  The Court addresses this argument below.

[3] Those six customers were: General Motors, Ford Motor Company, Johnson Controls, Vecta Contract Furniture, BWI of Kansas, and Weckworth Manufacturing.

law."[4]  "A fact is material if it 'might affect the outcome of the suit'" and a "factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[5]

### III.  Analysis

The defendants argue they are entitled to summary judgment for several reasons, some of which would narrow down and then extinguish Mickey Redmond's claim for unpaid commissions.  First, the defendants argue most of the claims are for more than four years preceding the lawsuit and are barred by limitations.  They contend fraudulent concealment cannot toll limitations because Mickey Redmond had actual knowledge of its claims.  Second, they contend Mickey Redmond failed to plead fraudulent concealment with Rule 9 particularity.  Third, they contend there is no allegation of an affirmative representation, which is needed under either Texas or California law.  Fourth, they argue Texas law applies and bars claims before Mickey Redmond's final month as a business partner.  Fifth, the defendants claim there is no contract with Morbern, Inc.  Sixth, they claim Magna and Lear aren't covered by the contract because they are in the original equipment maker industry and are not jobbers.  Seventh, they argue Miami Corp. and Magna are outside Mickey Redmond's geographic territory.  And eighth, the defendants contend the agreements and undisputed facts show the Morbern USA and RKB paid what they owed (which really isn't an independent argument).

---

[4] FED. R. CIV. P. 56(a).

[5] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Mickey Redmond counters that: (1) Texas law would forbid recovery preceding the four year statute of limitations, but California law applies and allows suits where monthly statements concealed the injury; (2) it pled fraudulent concealment with Rule 9 particularity; (3) the contracts should be conformed to the parties' dealings under California law to be for all sales into its territory from jobbers (including suppliers to car manufacturers); (4) the sales to Lear, Magna, and Miami Corp. were to companies in the specified industry list in the Morbern USA agreement (automotive jobbers) and the RKB agreement has no specified industry list and were also within Mickey Redmond territory.

## A. Brush Clearing

Before reaching the merits of the summary judgment motion, the Court must consider Mickey Redmond's objections to two of the defendant's summary judgment affidavits.  Mickey Redmond filed objections and motions to strike these in the prior round of summary judgment briefing.  Then Mickey Redmond incorporated by reference its objection that McGinnis lacks personal knowledge because he joined the defendants after the relevant time of this lawsuit ended.  It also incorporated by reference its objection that Vachon's declaration was true and correct "to the best of her knowledge" and did not state that all of RKB and Morbern USA's accounting functions occurred in the accounting department in Ontario where she worked.[6]  The

---

[6] The Court takes a dim view of incorporating by reference prior motions aimed at content that is no longer live.  For the sake of expediency, the Court has considered Mickey Redmond's arguments here notwithstanding their incorporation by reference.

Court will not consider portions of the affidavits at issue when deciding on the defendants' summary judgment motion.

Two substantive points warrant little discussion. The first is whether Morbern, Inc. is a proper party. The defendants claim that there is no evidence of a contract between Mickey Redmond and Morbern, so it is entitled to summary judgment. In prior summary judgment briefing, Mickey Redmond "acknowledges that there is no contract between it and Defendant Morbern, Inc. and that Morbern, Inc. is entitled to summary judgment on [Mickey Redmond]'s breach of contract claim."[7] In this round of summary judgment briefing, Mickey Redmond remained silent on the issue. But silence is insufficient to put forth evidence of a contract. Accordingly, the Court grants this argument as to Morbern, Inc. and dismisses with prejudice Mickey Redmond's claim against it.

The second substantive point bearing little discussion is whether Mickey Redmond can recover damages after the contracts were affectively terminated on May 4, 2014. Mickey Redmond effectively conceded this issue by acknowledging in its response that "[t]he issue before the Court is whether . . . [Mickey Redmond] should have been paid commission[s] on sales prior to their May 4, 2014 terminations."[8] And there is no evidence in the summary judgment record supporting a legal theory of commissions owed after termination. As such, the Court holds that the inquiry is limited to commissions owed by Morbern USA and RKB on May 4, 2014 or earlier.

---

[7] Doc. 34 at 3.

[8] Doc. 52 at 2.

7

B.  Pleading Fraudulent Concealment with Particularity

Next, the defendants contend that Mickey Redmond failed to plead or offer evidence to establish the elements of a fraudulent concealment defense under Texas or California law. Mickey Redmond contends its reply to the defendants' answer raising the defense of limitations meets the requirements of Rule 9.

While the Court finds Mickey Redmond's conclusory pleading to not meet the requirements of Rule 9, that is not a fatal defect.  The Court would ordinarily allow Mickey Redmond a final opportunity to replead to try to clear the Rule 9 hurdle.  But as explained below, there are insurmountable legal impediments to all of Mickey Redmond's claims.  Repleading would only prolong the inevitable dismissal of those claims.

C.  Limitations and Fraudulent Concealment

Assuming for the sake of argument Mickey Redmond pled fraudulent concealment with particularity, the Court must next assess the defendants' substantive arguments on fraudulent concealment.  They first contend that the summary judgment record establishes that Mickey Redmond actually knew of its claims, rendering fraudulent concealment inapplicable under Texas or California law.[9]  Mickey Redmond's response is that:

---

[9] The parties spilled much ink hashing out which law applied—Texas or California.  But the Fifth Circuit has admonished district courts to not wrangle over choice of law unless a conflict emerges between possible state laws.  As different as California and Texas are, *see generally* Motion for Leave to File a Bill of Complaint, *Texas v. California*, No. 22O153 (U.S. Feb. 11, 2020), https://www.texasattorneygeneral.gov/sites/default/files/images/admin/2020/Press/Texas v. California - filed.pdf, there is no such conflict here.  Both Texas and California law render fraudulent concealment inapplicable when the plaintiff had actual or constructive knowledge, and both state laws refrain from looking at parol evidence when a contract is unambiguous.  Because it wouldn't matter, the Court declines to determine whether Texas or California wins this round.

> Because the commission statements were comprehensive and always
> matched the amount of the RKB commission check to [Mickey
> Redmond], for years [Mickey Redmond] relied on them as accurate
> calculations of the commission due [Mickey Redmond] for sales in the
> five-state territory.  [Mickey Redmond] was totally dependent on RKB
> and [Morbern USA] to accurately and truthfully disclose each month the
> sales, the RKB and [Morbern USA] customers in the five-state territory,
> and the dollar amounts of sales in that territory that [Mickey Redmond]
> was not involved in or responsible for but nevertheless due a commission
> under the contracts.[10]

The Court agrees with the defendants that Mickey Redmond had actual or constructive knowledge of its claim prior to termination, which forecloses the application of fraudulent concealment.

Under both California and Texas law, fraudulent concealment only tolls the limitations period until a party knows or should know of its potential claim.[11]

Mickey Redmond's argument that it trusted the commission statements enough to not verify them falls short.  The record evidence establishes that Mickey Redmond had a Dallas warehouse that would ship products to customers in its territory and it would not receive a sales commission on such sales that originated through another sales representative.  For example, Mickey Redmond's CEO and corporate representative testified in his deposition that Mickey Redmond shipped the defendants' product from Mickey Redmond's Dallas warehouse to Miami Corp.'s Arlington warehouse.  For that sale, Mickey Redmond's commission report reflected

---

[10] Doc. 53 at 21.

[11] *See Shell Oil Co. v. Ross*, 356 S.W.3d 924, 928–29 (Tex. 2011) (royalty owners had duty to make a reasonable investigation in publicly available sources of royalty underpayment); *Sanchez v. South Hoover Hosp.*, 553 P.2d 1129, 1133–34 (Cal. 1976) ("It has long been established that the defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it.").

a warehouse fee but not a sales commission.   In addition, Mickey Redmond communicated on June 19, 2014 that it should have been paid a commission for "Morbern sales to General Motors, shipped to El Paso, for which [Mickey Redmond] was never paid a commission and which falls within the terms of [Mickey Redmond]'s existing contract with Morbern."[12]   This communication proposed an in-person mediation to avoid filing (this) suit.

At base, Mickey Redmond is functionally arguing that it chose not to check the commission reports and instead opted to trust its business partners.   If Mickey Redmond's legal interpretation of the agreements is correct, any shipment to a customer in the covered territory should also have resulted in a sales commission. The commission reports the Morbern USA and RKB sent Mickey Redmond demonstrate the Morbern USA and RKB were not complying with Mickey Redmond's view of the agreements.   That triggered Mickey Redmond's actual or constructive notice and its duty to sue before limitations ran.[13]   Because actual notice negates Mickey Redmond's fraudulent concealment avoidance of the defendants' limitations defense, Mickey Redmond can only recover for unpaid commissions four years before

---

[12] Doc. 51 at 130.

[13] Because Mickey Redmond's affidavit is a conclusory assertion that contradicts its former sworn testimony of its corporate representative that Mickey Redmond did not know of the issue before termination, the Court need not credit this evidence.  *See Powell v. Dallas Morning News L.P.*, 776 F. Supp. 2d 240, 247 (N.D. Tex. 2011) ("nonmovant cannot defeat a motion for summary judgment by submitting an affidavit [that] contradicts, without explanation, his previous testimony.").   In any event, the conclusory evidence does not indicate Mickey Redmond could not have known of its claims, and indeed the evidence if anything shows the contrary.

the date it sued (April 4, 2018).  This narrows the recovery window from April 3, 2014 to May 4, 2014.[14]

### D.  "Jobbers" During the Month in Question

The remaining issues regard whether Morbern USA and RKB owed Mickey Redmond commissions in the remaining month in question for shipments to Lear, Magna, and Miami Corp. in the territory specified in the agreements.  This inquiry necessarily includes whether these companies were automotive jobbers within the meaning of the Morbern USA agreement.  The defendants contend they are not (and are instead original equipment maker suppliers).  Mickey Redmond argues the defendants are rewriting the Morbern USA agreement to add a restriction that isn't there.  The Court, looking to the context of the agreement and the public meaning of "jobber" concludes that a jobber is one who undertakes jobs on a small scale—which necessarily excludes Lear and Magna, who were providing products to original equipment car makers like Ford and General Motors.

We begin (and almost always end) with the text of the agreement.  The Morbern USA agreement provides that: "Mickey Redmond & Co. will be responsible for sales and services to the furniture upholstery, jobber (Furniture and Automotive) Van and motor home, contract office, marine, exceptions are bus, truck (highway tractor) industrial seating and vacuum-foam products except where designated and

---

[14] As a result of this ruling, the Court need not reach the defendants' additional arguments to narrow the window for potential recovery.  This includes the arguments over whether California or Texas law apply regarding fraudulent concealment.

assigned."[15]  The two-page agreement doesn't define "jobber."  Neither party makes a textualist argument.  Instead, the defendants argue the parol evidence of the parties' course of business show that Morbern USA handled sales to suppliers of original equipment makers itself from its Michigan office and that the Mickey Redmond CEO at his deposition never heard of an "OEM jobber."  Mickey Redmond counters that a jobber is one who supplies materials and it received sales commissions on a supplier to Toyota (an original equipment maker).

True, "jobber" is undefined.  But the textualist toolbox for such conundrums is not as sparsely filled as the parties think.  That toolbox involves looking to the surrounding context of the language at issue and ascertaining the original public meaning of an undefined term from sources like dictionaries.  Parol evidence is a last resort, not a first step.

The context of the agreement sheds some light on what jobber means and doesn't mean.  In the agreement, "jobber" refers to both the furniture and automotive industry.  But two additional portions of that sentence are helpful.  First, there are also automotive references to vans and motor homes and exceptions for buses and trucks (tractor trailers).  "Jobber" does not modify these automotive terms, so jobber must mean something narrower than any automotive upholstery supplier.  Second, while "jobber" also modifies "furniture," the preceding language has a reference to "furniture upholstery" that "jobber" doesn't modify.  This also confirms that "jobber" for automotive is narrower than all suppliers for automotive.

---

[15] Doc. 51 at 17.

Dictionary definitions confirm that a jobber is not anyone who does work but is instead a smaller scale worker.  Webster's American Dictionary of the English Language, dating to 1828, defines a jobber as "[o]ne who does small jobs."[16]  That meaning has changed very little over time.  Webster's online dictionary currently defines a jobber both as "a wholesaler who operates *on a small scale* or who sells only to retailers and institutions" and "a person who works by the job."[17]

The defendants' interpretation of these words gives credence to the context of the agreement.  Their interpretation is that jobber excludes Tier 1 suppliers to original car makers like Ford and General Motors.  This industry accepted definition also explains why Mickey Redmond's CEO never heard of an OEM jobber.[18]

Mickey Redmond points out that it was previously paid for sales to suppliers of Toyota.  But this does not mean that act amended the agreement for all time.  If a baker supplies a baker's dozen by gratuitously giving an additional donut, he or she is not forever modifying a contract with that customer to always give 13 donuts instead of 12.[19]

When the parties failed to expressly define a term in a contract, courts look to the context of that term in the contract and the public meaning of the term before

---

[16] *Jobber*, MERRIAM WEBSTER, AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE (1828 ed.), http://webstersdictionary1828.com/Dictionary/jobber (last revised Feb. 24, 2020).

[17]   *Jobber*, MERRIAM   WEBSTER   ONLINE   DICTIONARY,   https://www.merriam-webster.com/dictionary/jobber (last visited Sept. 11, 2020) (emphasis added).

[18] Mickey Redmond's corporate representative and CEO testified that "[w]ith respect to the OEMs, I never heard of a jobber with the OEMs.  I knew jobbers for the aftermarket."  Doc. 51 at 151.

[19] Even under California law, which Mickey Redmond argues should apply, "course-of-performance evidence . . . may not be used to vary or contradict the unambiguous terms of a written agreement." *Wind Dancer Prod. Grp. v. Walt Disney Pictures*, 215 Cal. Rptr. 3d 835, 848 (Cal. Ct. App. 2017).

resorting to the parties' course of conduct.  Here, "jobber" means one who does small jobs.

Applying this interpretation here, the Court concludes that Lear and Magna are not automotive jobbers. [20]  The parties do not dispute that Lear and Magna supply to General Motors.  Mickey Redmond contends, however, that Miami Corp. "is a jobber to after-market automotive manufacturers."[21]  The Court concludes that, viewing the evidence in the light most favorable to Mickey Redmond, Miami Corp. is a jobber to aftermarket manufacturers and falls under the industry definition in the Morbern USA agreement.  But Lear and Magna, admitted suppliers to original car makers, cannot constitute automotive jobbers.

### E.  Miami Corp.

The last unpaid commissions standing are for sales to Miami Corp.  The defendants make several additional arguments that would preclude sales commissions to Mickey Redmond for sales to Miami Corp. during the month in question.  First, the defendants contend the territory in the agreement is for whether a customer makes purchasing decisions in the territory—not where the products are shipped.  Second, they argue that only $2,430.32 of the $95,643.54 in sales to Miami Corp. during the month in question were shipped to Mickey Redmond's territory, resulting in a 5% sales commission of $121.50.  Third, they argue that their shipments were "free on board" shipments originating from outside Mickey Redmond territory,

---

[20] Doc. 54 at 14.

[21] Doc. 54 at 14.

thereby excluding them from a sales commission under the agreement.  Fourth, they argue that Mickey Redmond made no sales to Miami Corp. therefore is not entitled to a sales commission.  Mickey Redmond responds that the course of conduct indicated that the place the shipment is to arrive controls whether a commission is owed.  The Court agrees with the defendants' fourth argument: that under the agreement, a sales commission was only owed to Mickey Redmond if it made a sale.  And because there is no evidence Mickey Redmond made the sales to Miami Corp., it has no legally viable claim for a commission.

The Morbern USA agreement provides: "Mickey Redmond & Co. is hereby appointed sales agents for Morbern U.S.A. Inc and will be paid a commission rate of 5 percent of net sales (defined as sales that are sold and shipped, minus discount, returns and bad debts.)."[22]  The Court does not interpret a "sales agent" as one who did nothing—as Mickey Redmond would have the court do.  Words mean something.  And here, Morbern USA and Mickey Redmond defined "sales agent" to mean Mickey Redmond making a sale.

So did Mickey Redmond make the sales to Morbern USA in the month in question?  The summary judgment record shows that it did not.  Mickey Redmond's corporate representative and CEO testified as follows:

> Q.  Okay. Did you have any other—any other conversations with anyone else that gave you the belief that there were shipments into Texas that you weren't paid commissions for?
>
> A.  There was rumors, but no absolute proof.  Okay.  Nobody would— You know, other than I had confirmation that there was stuff going on

---

[22] Doc. 51 at 17.

behind my back that I had no clue about, and I'm sure we're going to find out more in the discovery down the road.

Q.  When did you start hearing these rumors?

A.  It was—it was—it was after they let me—you know, after they let me go. And, you know, people—Arch basically said that, you know, there was—there was stuff going on behind my back, you know.  And, listen, I trusted these people for a long time, you know.[23]

Rumors would involve sales others made that Mickey Redmond wanted a commission on.  If there were sales Mickey Redmond made, it could check the commission statements to determine if it was rightfully paid and would have no need to inform itself by rumors.  When the defendants raised this issue that Mickey Redmond performed no sales or service on these sales, Mickey Redmond pointed to no record evidence in response.  As these sales Mickey Redmond did not make are the only sales in the time period not barred by limitations and to a covered industry, Mickey Redmond has no viable claims.[24]

IV.  Conclusion

For the foregoing reasons, the Court **GRANTS** the defendant's motion for summary judgment.

---

[23] Doc. 51 at 201–02.

[24] Because of this ruling, the Court need not reach the defendants' additional arguments.  And this reason that Mickey Redmond cannot recover commissions for Miami Corp. applies with equal force to Magna and Lear, as there is no evidence Mickey Redmond performed sales or service on those sales in the month in question either.

**IT IS SO ORDERED** this 16th of September 2020.


_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE